WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Premier Funding Group LLC, | No. CV-14-01633-PHX-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Aviva Life and Annuity Company, et al., | |
| Defendants. | |

Defendant Crump Life Insurance Services, Inc. has filed a motion to dismiss. Doc. 89. The motion is fully briefed. The Court will grant the motion on Premier's claims for insurance fraud and negligent supervision, and deny the motion on Premier's claims for unjust enrichment and vicarious liability.[1]

**I.   Background.**

This case involves a $566,850 loan that Plaintiff Premier Funding Group made on the basis of Defendant Richard Baldwin's alleged fraud. Baldwin was an insurance agent who had an agreement with Aviva Life and Annuity Company to sell insurance products. Doc. 84, ¶¶ 2, 18-19. In the spring of 2011, Baldwin began working with Gardner Brown to sell two Aviva life insurance policies to Brown's clients. *Id.*, ¶ 23. Among Brown's clients were David and Victor Kimball, who live in Utah. *Id.*, ¶¶ 6-7, 38. Although the Kimballs had completed much of the paperwork necessary to acquire two $10 million life

---

[1] The parties' request for oral argument is denied because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

insurance policies for themselves, they ultimately informed Brown that they did not want the policies. *Id.*, ¶¶ 44-47, 57. Brown gave this information to Baldwin. *Id.*, ¶ 58. Baldwin told Brown that he would nevertheless complete the underwriting on the Kimballs' application in case they changed their minds. *Id.*, ¶ 59.

Baldwin worked with Nicholas Larsen and the company that employed Larsen, Crump Life Insurance Services. *Id.*, ¶¶ 67, 93-94. Crump is an independent wholesale distributor of life insurance. *Id.*, ¶¶ 3, 16. Baldwin and Larsen used Crump to process Aviva life insurance policy applications and Crump paid them commissions for their work. *Id.*, ¶¶ 47-48, 67. At some point, Larsen allegedly forged the Kimballs' signatures on promissory notes that were to be given to Plaintiff Premier Funding Group, LLC in exchange for a loan to fund the substantial premiums on the life insurance policies. *Id.*, ¶¶ 93, 216-18.

Premier is an Arizona company that provides premium financing. *Id.*, ¶¶ 1, 51. Premium financing involves the loaning of funds necessary to pay insurance premiums. *Id.*, ¶ 26. To obtain financing for the Kimballs' life insurance policy, Baldwin sent Premier the promissory notes with the forged signatures of the Kimballs. *Id.*, ¶¶ 74, 216-18. As was common for this type of transaction, Baldwin also agreed to purchase the promissory notes from Premier with the commission money he would receive for selling the life insurance policies. *Id.*, ¶¶ 53-55, 74. Following Baldwin's instructions, Premier wired $566,850 that ultimately went to Aviva. *Id.*, ¶ 83. Aviva then issued the policies for the Kimballs and paid commissions to Baldwin and Crump. *Id.*, ¶ 84-85.

Gardner Brown soon discovered that Aviva had issued the life insurance policies even though his clients, the Kimballs, did not want them. *Id.*, ¶ 92. Brown's lawyer and the Kimballs informed Aviva that the Kimballs had not agreed to purchase the policies. *Id.*, ¶¶ 96-98. Soon after, Aviva terminated Baldwin and began an investigation into the Kimballs' policies. *Id.*, ¶¶ 103-15. In January of 2012, Premier's counsel sent a letter to Aviva demanding that Aviva hold in trust the money it had received for the Kimballs' life insurance. *Id.*, ¶ 109. After receiving these letters, Aviva began to unwind the fraudulent

1  transactions involving the Kimballs (*id.*, ¶¶ 115-24), but Aviva refused to return the $566,850 to Premier (*id.*, ¶ 175).

On February 6, 2014, Premier filed this lawsuit in Maricopa County Superior Court. Doc. 1-3. Premier sued Aviva, Crump, Baldwin, Larsen, Anthony Lengeling, and the Kimballs. *Id.* Premier subsequently dismissed its claims against the Kimballs. Doc. 1-3 at 97. On July 18, 2014, Defendants removed the case to this Court. *See* Doc. 1-2; Doc. 73. The Court granted Defendant Lengeling's motion to dismiss for lack of personal jurisdiction and granted in part Aviva's motion to dismiss for failure to state a claim. Doc. 96.

## II.  Legal Standard.

When analyzing a complaint for failure to state a claim to relief under Rule 12(b)(6), the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). Legal conclusions couched as factual allegations are not entitled to the assumption of truth, *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009), and therefore are insufficient to defeat a motion to dismiss for failure to state a claim, *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010). To avoid a Rule 12(b)(6) dismissal, the complaint must plead enough facts to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## III.  Material Outside the Pleadings.

Crump asks the Court to consider two documents in ruling on the motion to dismiss. Generally, the Court will not consider evidence beyond the complaint when ruling on a Rule 12(b)(6) motion. *See United States v. Ritchie*, 342 F.3d 903, 907-08 (9th

- 3 -

Cir. 2003). "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). "A court may, however, consider certain materials – documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice – without converting the motion to dismiss into a motion for summary judgment." *Ritchie*, 343 F.3d at 908. A court may also "consider evidence on which the complaint 'necessarily relies' if: "(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (citation omitted). If a plaintiff disputes the truth of statements contained in an extrinsic document, a court may not consider those statements in ruling on a motion to dismiss. *See Lee v. City of L.A.*, 250 F.3d 668, 689 (9th Cir. 2001).

The first document submitted by Crump is a transcript of a Utah criminal preliminary hearing in which Defendants Richard Baldwin and Nicholas Larsen testified. Doc. 89-1. Premier's Second Amended Complaint cites testimony from this hearing to support its claim that Larsen was responsible for forging the Kimballs' signatures on the promissory notes. Doc. 84, ¶ 216. Crump seeks to use Larsen's testimony to establish that his conduct was outside the course and scope of his employment with Crump. *See* Doc. 89 at 15. In its response, Premier questions the credibility of Larsen's testimony. Doc. 110 at 3-4. Because Premier disputes the truth of Larsen's statements, the Court will not consider these statements in ruling on the motion to dismiss. *See Lee*, 250 F.3d at 689.

The second document consists of the Kimballs' life insurance applications. Doc. 89-2. Premier also questions the authenticity of these documents. Doc. 110 at 4. The Court therefore will not consider them. *See Marder*, 450 F.3d at 448. Given the early stage of this litigation, the Court declines to convert Crump's motion to dismiss into a motion for summary judgment.

IV. **Analysis.**

A. **Insurance Fraud.**

Premier sues for insurance fraud under Utah Code Ann. § 31a-31-103(3)(c). Doc. 84, ¶¶ 260-76. In light of the Court's previous order (Doc. 96 at 14), Premier concedes that its insurance fraud claim against Crump should be dismissed (Doc. 110 at 2). The Court therefore grants Crump's motion to dismiss this claim.

B. **Unjust Enrichment.**

Crump moves to dismiss Premier's claim that Crump was unjustly enriched when it received commissions for processing the Kimballs' life insurance applications. Doc. 89 at 8. "Unjust enrichment occurs when one party has and retains money or benefits that in justice and equity belong to another." *Trustmark Ins. Co. v. Bank One, Ariz., NA*, 48 P.3d 485, 491 (Ariz. Ct. App. 2002). Generally, "[t]o recover under a theory of unjust enrichment, a plaintiff must demonstrate five elements: (1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and impoverishment, (4) the absence of justification for the enrichment and impoverishment, and (5) the absence of a remedy provided by law." *Freeman v. Sorchych*, 245 P.3d 927, 936 (Ariz. Ct. App. 2011).

Crump relies primarily on this Court's decision in *Haller v. Advanced Indus. Computer Inc.*, 13 F. Supp. 3d 1027 (D. Ariz. 2014). *Haller* explained that "Arizona follows the Restatement of Restitution [§110] which provides that '[a] person who has conferred a benefit upon another as the performance of a contract with a third person is not entitled to restitution from the other merely because of the failure of performance by the third person.'" *Id.* at 1032 (citing *Advance Leasing & Crane Co., Inc. v. Del E. Webb Corp.*, 573 P.2d 525, 526-27 (Ariz. Ct. App. 1977)). Crump argues that even though Premier may have indirectly conferred the benefit of a commission on Crump by virtue of its (fraudulent) contract with the Kimballs to loan money for their insurance premiums, or by virtue of its contract with Baldwin to repurchase the Kimball notes from Premier, the failure of those contracts provides no basis for an unjust enrichment claim against Crump.

Arizona courts, however, have adopted an important qualification to the rule set forth in § 110 of the Restatement. In *Wang Elec., Inc. v. Smoke Tree Resort, LLC*, 283 P.3d 45 (Ariz. Ct. App. 2012), the Arizona Court of Appeals held that a property owner may be held liable for unjust enrichment when the owner's tenant contracts with a contractor for improvements to the owner's property, the contractor performs the work, the tenant fails to pay the contractor, and the owner engages in some form of improper conduct. Acknowledging the general rule of § 110, the Court of Appeals explained that "a contractor hired by a tenant to make improvements to leasehold premises, or subcontractors retained by that contractor, can recover unpaid monies for making tenant improvements from the property owner only when that owner has engaged in improper conduct." *Id.* at 51. Thus, although it generally is true that "[a] person who has conferred a benefit upon another as the performance of a contract with a third person is not entitled to restitution from the other merely because of the failure of performance by the third person," *Haller*, 13 F. Supp. 3d at 1032, that rule gives way when the other has engaged in improper conduct.[2]

Premier alleges that Crump engaged in improper conduct. The Second Amended Complaint alleges that Larsen was acting within the course and scope of his employment with Crump when he forged the Kimballs' signatures on the promissory notes and fabricated internal emails, that Larsen knew the forged notes would be used to induce Premier to loan money for the insurance premiums and generate a commission for Crump, that Larsen's supervisor and Crump knew of his wrongful conduct, and that Crump is liable for Larsen's conduct. Doc. 84, ¶¶ 216-220, 222, 224, 227, 257, 264, 287. Crump, like the property owner in *Wang*, may not have had a direct or contractual relationship with the party now suing for unjust enrichment, but Crump plainly is alleged

---

[2] The defendant in *Haller* cited *Wang* and argued that it had not engaged in improper conduct. *Id.* at 1031. In response, the plaintiff argued that the defendant engaged in improper conduct by failing to pay plaintiff the amount by which the defendant was unjustly enriched. Because *Wang* plainly refers to a kind of improper conduct other than the defendant's simple failure to pay the amount of the claimed unjust enrichment, the Court decided *Haller* on the basis of the general rule in Restatement § 110. There was no broader allegation of improper conduct as there is in this case.

- 6 -

to have engaged in improper conduct with respect to Premier.  Under the Arizona rule announced in *Wang*, therefore, Crump can be liable for unjust enrichment to Premier.[3]

Crump notes that it may be required to return the commission money to Aviva.  Doc. 89 at 10.  If Crump returns the money to Aviva, then Crump may well be able to argue that it has not been enriched and is not liable for unjust enrichment.  Until that time, however, Premier has stated a claim for unjust enrichment.

### C. Negligent Supervision.

Premier claims that Crump negligently supervised Larsen.  Doc. 84, ¶¶ 369-80.  Under Arizona law, an employer may be liable for negligently hiring, retaining, or supervising an employee when the employer's negligence causes the employee to harm another.  *Kassman v. Busfield Enterprises, Inc.*, 639 P.2d 353, 356 (Ariz. Ct. App. 1981) (quoting Restatement (Second) of Agency § 213).  The employer's liability is predicated on its own negligence, not that of the employee.  *See Quinonez v. Andersen*, 696 P.2d 1342, 1346 (Ariz. Ct. App. 1984) ("[L]iability is direct and not derivative.").  A necessary element of any negligence claim is the existence of a duty to the injured party.  *Dawson v. Withycombe*, 163 P.3d 1034, 1059 (Ariz. Ct. App. 2007).

A party's duty of care is a question of law for the Court to decide.  *Gipson v. Kasey*, 150 P.3d 228 (Ariz. 2007).  "Duty is defined as an 'obligation, recognized by law, which requires the defendant to conform to a particular standard of conduct in order to protect others against unreasonable risks of harm.'"  *Id.* at 230 (quoting *Markowitz v. Arizona Parks Bd.*, 706 P.2d 364, 366 (Ariz. 1985)).  "Courts have not recognized a general duty to exercise reasonable care for the purely economic well-being of others, as distinguished from their physical safety or the physical safety of their property."  *Lips v. Scottsdale Healthcare Corp.*, 229 P.3d 1008, 1010 (Ariz. 2010).  To impose liability for negligent conduct that causes a purely economic loss, a special relationship between the parties or a strong public policy must exist.  *Id.*

---

[3] Many of Crump's unjust enrichment arguments assume that it is not responsible for the wrongful actions of Larsen.  In light of the allegations of the complaint, however, that Court may not make that assumption at the pleading stage.

- 7 -

The Court finds two Arizona cases instructive. In *DeJonghe v. E.F. Hutton & Co.*, 830 P.2d 862 (Ariz. Ct. App. 1991), the defendant managed clients' investment accounts. *Id.* at 864. Two of the defendant's brokers, with the firm's approval, changed their clients' portfolios to riskier investments, ultimately resulting in losses. *Id.* The court held that the firm had a duty to the clients and was liable for its negligent supervision of its employees. *Id.* at 866-67.

In *Dawson v. Withycombe*, 163 P.3d 1034 (Ariz. Ct. App. 2007), a company's employees induced Dawson to loan money to the company. *Id.* at 1042-43. The employees misrepresented to Dawson the priority of the security Dawson would receive for the loan. *Id.* at 1043. When the company went bankrupt and the misrepresentation came to light, Dawson sued the company's corporate director for negligent supervision. *Id.* In holding that the director was not liable, the court found "no case providing that a corporate director has an affirmative duty to protect potential creditors from alleged misrepresentations by corporate employees. . . . [F]or personal liability to attach, the involvement of the directors must be more direct and not simply based on failure to properly supervise corporate employees." *Id.* at 1059-60.

These distinctions have been recognized in other cases. Courts applying Arizona law have held that a real estate company owes a duty of care to its clients, *Pruitt v. Pavelin*, 685 P.2d 1347, 1349-50 (Ariz. Ct. App. 1984), but that an insurance company does not owe a duty to a third party that is not its insured, *McClure Enterprises, Inc. v. Gen. Ins. Co. of Am.*, No. CV05-3491-PHX-SMM, 2009 WL 73677, at *8-9 (D. Ariz. Jan. 9, 2009).

Premier does not allege that it had a special relationship with Crump akin to that of a client. The extent of its relationship was that Larsen sent allegedly fraudulent promissory notes to Baldwin, who then sent the notes to Premier to induce it to finance a life insurance policy that Crump had processed and on which Crump would earn a commission. This relationship is even more tenuous than that of the creditor in *Dawson* and does not amount to client-company relationship.

Premier argues that § 317 of the Restatement supports a duty in this case. The Court does not agree. Section 317 addresses when a "master" has a duty "to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them[.]" Restatement (Second) of Torts § 317. As courts have explained, "the entire thrust of section 317 is directed at an employer's duty to control his or her employee's physical conduct while on the employer's premises or while using the employer's chattels, even when the employee is acting outside the scope of the employment, in order to prevent intentional or negligent infliction of personal injury. Nothing in section 317 calls for its application in a case involving economic loss only." *Semrad v. Edina Realty, Inc.*, 493 N.W.2d 528, 534 (Minn. 1992).

Premier has failed to plausibly allege that "a *sufficient* relationship exists between the parties to make it reasonable, as a matter of public policy, to impose a duty." *Stanley v. McCarver*, 92 P.3d 849, 852 (Ariz. 2004) (emphasis in original). This is particularly true because the losses caused by Crump's alleged negligence are purely economic. *See Lips*, 229 P.3d at 1010. The Court will dismiss Premier's claim for negligent supervision.

### D.    Vicarious Liability.

Premier claims that Crump is vicariously liable for Larsen's alleged fraud, negligent misrepresentation, and aiding and abetting. Doc. 84, ¶¶ 226, 257, 357. Crump argues that Larsen was not acting within the course and scope of his employment when he allegedly committed these torts. Doc. 89 at 13-15.

"[A]n employer may be held vicariously liable under the doctrine of respondeat superior for the negligent acts of its employee acting within the course and scope of employment." *Engler v. Gulf Interstate Eng'g, Inc.*, 258 P.3d 304, 309 (Ariz. Ct. App. 2011), *aff'd*, 280 P.3d 599 (Ariz. 2012). "For an employer to be held vicariously liable for an employee's negligent acts, the employee must be (1) subject to the employer's control or right of control, and (2) acting in furtherance of the employer's business." *Id.* (citing *Robarge v. Bechtel Power Corp.*, 640 P.2d 211, 214 (Ariz. Ct. App. 1982)). "A

wrongful act committed by an employee while acting in his employer's business does not take the employee out of the scope of employment, even if the employer has expressly forbidden the act." *Ortiz v. Clinton*, 928 P.2d 718, 723 (Ariz. Ct. App. 1996). "'Whether an employee's tort is within the scope of employment is generally a question of fact. It is a question of law, however, if the undisputed facts indicate that the conduct was clearly outside the scope of employment.'" *McCloud v. State, Ariz. Dep't of Pub. Safety*, 170 P.3d 691, 700 (Ariz. Ct. App. 2007) (quoting *Smith v. Am. Exp. Travel Related Servs. Co.*, 876 P.2d 1166, 1171 (Ariz. Ct. App. 1994)).

Premier plausibly alleges that Larsen was acting in the course and scope of his employment with Crump. The Second Amended Complaint alleges that Larsen was acting within the course and scope of his employment when he forged the Kimballs' signatures on the promissory notes and fabricated emails, that Larsen's supervisor and Crump knew of his wrongful conduct, and that Larsen's actions were taken in furtherance of Crump's insurance business and conferred a financial benefit on Crump. Doc. 84, ¶¶ 216-220, 222, 224, 227, 257. In arguing to the contrary, Crump relies on extrinsic documents attached to its motion. Doc. 89 at 13-15. As already noted, the Court may not consider these documents in ruling on this motion to dismiss. The Court will therefore deny Crump's motion to dismiss Premier's vicarious liability claims.

**IT IS ORDERED** that Crump's motion to dismiss (Doc. 89) is **granted** on Premier's claims for insurance fraud and negligent supervision, and **denied** on Premier's claims for unjust enrichment and vicarious liability.

Dated this 25th day of February, 2015.

David G. Campbell
United States District Judge